### KING v. WALBRIDGE et al.

(*Supreme Court, General Term, Third Department.* May, 1888.)

CHATTEL MORTGAGES—FORECLOSURE—RIGHT OF MORTGAGEE TO PURCHASE.
　　A mortgagee of chattels may purchase the chattels when sold under the mortgage, the sale being made with due notice after default.

Appeal from special term.

This action is in the nature of a creditors' bill to set aside as fraudulent and void, as against the plaintiff, Charles F. King, as receiver, etc., of Sarah R. Wilber and John F. Wilber, a sale of stock and materials by the plaintiff under chattel mortgages upon the same, given by the judgment debtors, Sarah R. and John S. Wilber. The charge of the plaintiff substantially is that one Walbridge, impleaded with the judgment debtors as defendants, who held a chattel mortgage upon the stock and materials to secure the payment of a just debt, fraudulently combined with the judgment debtors to expand his claim beyond what was justly due him, and so conducted the sale under the chattel mortgage as to secure the possession and apparent title of a large and valuable property in fraud of the other creditors of the Wilbers. The complaint was dismissed, and plaintiff appeals.

. *S. Brown,* for appellant. *E. T. Brackett,* for respondents.

LANDON, J. The trial court refused to find the fraud charged in the complaint. In response to the requests of the defendant Walbridge, the transactions of which the plaintiff complains are set forth in a plain way, and negative all charge of fraud on the part of Walbridge. The court, in its opinion, stated that it did not believe the testimony of Wilber, tending to detail the fraudulent combination charged in the complaint; and the court, after stating that it "was not favorably impressed with his manner and appearance as a witness," enumerates six several reasons for its disbelief, the fifth of which is: "His story, as a whole, is improbable, and a court would be justified in refusing to credit it, even if uncontradicted." Now the appellant asks us to find that this story is corroborated by the testimony of Walbridge, and by all the circumstances in the case. We have examined the testimony, in connection with the suggestions and with the aid of the appellant's elaborate brief, and the result is a conviction that the judgment is right, and ought to be affirmed. To set forth at full length the reasons for this conclusion would be to reproduce in great part the brief of the respondent's counsel. It is plain that, from the 7th of August until the final sale of the property, the Wilbers were in a desperate condition, and in the hands of Walbridge, who was harshly, but not illegally, pursuing his remedies to recover the money he had loaned. The Wilbers were anxious to gain time, hoping against hope to extricate themselves from their difficulties, and willing to give to Walbridge any new chattel mortgage or lease of the premises in their hope to lead him to grant time, or enter into some arrangement whereby they might continue the business, and obtain ultimate control. Walbridge saw that his security under the first chattel mortgage of the February previous was imperiled, in consequence of the fact that in the mean time Wilber had disposed of a considerable part of the property specified in that mortgage, and had bought other property in its stead. He was anxious to get a new mortgage covering the new property,

and a lease of the factory, in order that he might make his possession of the mortgaged property complete. He foresaw that he would have to sell the property, and that he probably would be obliged to buy it himself, and that in such case the wisest thing to do would be to work up the property in the business for which it was suitable, and also that Wilber could do this better than anybody else. That he acted in conformity to these views, and that his entire conduct was in furtherance of them, seems to be the most reasonable view to be taken of the entire testimony. It seems improbable that Walbridge should enter into a combination having for its purpose a fraud upon other creditors when he was in doubt about realizing enough to pay himself. That Wilber should, however, suppose that the entire property was worth the sum he hoped to realize out of it if he should be permitted to continue to manufacture carriages from it, it may be easy to believe; and hence that he should regard the scheme to which he assented as a fraudulent one to keep the other creditors at bay, we may, in view of his testimony, also believe. But the event disclosed the difference between Wilber's sanguine expectations and the fact. There certainly was no good reason why Walbridge should enter into any such combination, unless for the purpose of procuring the additional mortgage and lease; but Gilbert's testimony shows that the additional mortgage was the suggestion of Wilber, as an inducement to gain time. It may be that Wilber parted with his second mortgage too readily, hoping for more benefits and for more time than he procured by it. The property appears to have been fairly exposed for sale and sold.

The objection that Walbridge, the mortgagee, could not purchase the mortgaged chattels at a public sale, is not well taken. The sale was valid in law, and only voidable in equity at the suit of some one injuriously affected by it. *Olcott* v. *Railroad Co.*, 27 N. Y. 546. The mortgagee's title became perfect in law against the mortgagor upon default. *Judson* v. *Easton*, 58 N. Y. 664. The mortgagor could ratify the sale, and he did. *Davenport* v. *McChesney*, 86 N. Y. 242. The receiver had no lien upon the chattels at the time of the mortgage sale. Id. It is believed, however, notwithstanding some cases apparently to the contrary, that a mortgagee may purchase the mortgaged chattels at a public sale after due notice. The reasons given in *Olcott* v. *Railroad Co.* are satisfactory, and the opinion there given has been followed. *Hall* v. *Ditson*, 55 How. Pr. 19; *Edmiston* v. *Brucker*, 40 Hun, 256. The judgment should be affirmed, with costs.

LEARNED, P. J., and INGALLS, J., concur.